UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VISALUS, INC.,

    Plaintiff,

v.

BRYAN BELLVILLE,

    Defendant.
                                                       /

Case No. 15-10076

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION [16]**

On January 9, 2015, Plaintiff, ViSalus, Inc., filed this breach of contract action alleging that Defendant, Bryan Bellville, failed to honor the terms of a non-solicitation agreement between the parties. Plaintiff seeks an injunction prohibiting Defendant from recruiting or soliciting its employees and an award of money damages stemming from his unlawful conduct.

Currently before the Court is Defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. For the reasons stated more fully below, the Court DENIES Defendant's motion.

**I.   Background**

ViSalus is a marketing company that sells weight-management products, nutritional supplements, and energy drinks. The company's business model, often referred to as "multi-level marketing" relies upon a vast network of independent contractors who, in addition to selling product to their friends and acquaintances, are responsible for recruiting others to serve as ViSalus distributors. Each independent-contractor distributor is

compensated both for his own sales as well as for the sales of those he has recruited, continuing like a pyramid. This recruited sales-force is referred to as the participant's "downline," and can provide multiple levels of compensation.

Defendant Bryan Bellville was a very successful distributor of ViSalus products, with a substantial downline of more than 421 "promoters" and 1,113 customers. According to ViSalus, Bellville's total sales volume over five years with the company exceeded $67 million. On or around December 24, 2014, Bellville stopped selling ViSalus' products and became a distributor for one of its direct competitors, Modere. Within weeks of Bellville's departure, ViSalus filed a complaint with this Court alleging claims for breach of contract and tortious interference with business relationships. At its core, Visalus' complaint is premised on the allegation that Belville solicited its distributors in violation of two agreements between the parties.

ViSalus identifies the two agreements at issue as the "polices and procedures" governing an individual distributor's relationship with the company. Both of these agreements–which appear to contain essentially the same material terms–prohibit distributors, for one year, from soliciting or recruiting ViSalus employees or distributors from participating in any other "network marketing program." This restriction is not geographically limited in any way. Both iterations of the policies and procedures were in the form of point-and-click agreements, where Bellville allegedly agreed to be bound by their contents by clicking an "I have read and agree to the Terms and Conditions" button while registering online to be a ViSalus distributor. Bellville, for his part, denies ever agreeing to these terms.

2

According to ViSalus, Bellville has breached the non-solicitation provision contained in the policies and procedures by actively recruiting ViSalus distributors to Modere. More specifically, Plaintiff offers the following text message exchange between Bellville and Matthew Britt, allegedly a ViSalus distributor:



Plaintiff further alleges that Defendant "is believed to be soliciting [other ViSalus distributors] via Facebook, by email, and text messages." (Compl. ¶ 30). On January 9, 2015, ViSalus brought this suit seeking injunctive relief against Bellville prohibiting him from soliciting or recruiting any of its employees or distributors.

**II.    Standard**

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal for lack of subject matter jurisdiction. "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its

face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *Abbott v. Michigan*, 474 F.3d 324, 327 (6th Cir.2007) (citations and internal quotations omitted); *see also Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990).

Where, as here, the factual basis for subject matter jurisdiction is challenged, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). In doing so, the court has wide discretion to consider affidavits and documents outside the complaint. *Id.* Consideration of documents outside the pleadings does not convert the Rule 12(b)(1) motion into a Rule 56 motion. *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915–16 (6th Cir.1986).

**III. Analysis**

Under the statute authorizing jurisdiction in this case, the parties must be citizens of different states and the amount in controversy must exceed $75,000. 28 U.S.C. § 1332. Bellville does not dispute that the parties are diverse (Def.'s Mot. 10), but argues that the Court lacks jurisdiction over the subject matter because ViSalus cannot satisfy the $75,000 amount in controversy threshold. Specifically, Bellville maintains that ViSalus' damages claim is unduly speculative and immeasurable. In response, ViSalus argues that, notwithstanding the monetary damage Bellville has already caused through soliciting its distributors, the value of an injunction prohibiting him from engaging in future solicitation of his $8 million downline network is both readily ascertainable with expert testimony and far

4

exceeds the $75,000 requirement. The Court finds that ViSalus has the better of these arguments.

In a federal diversity action, the Sixth Circuit has held that the amount alleged in the complaint normally satisfies the jurisdictional requirements unless it is shown that the plaintiff made the claim in bad faith. *Schultz v. General R.V. Ctr.*, 512 F.3d 754, 756 (6th Cir. 2008) (citation omitted). A showing of bad faith is made if the defendant demonstrates "to a legal certainty" that the original claim was really for less than the amount-in-controversy requirement. *Id.* (quoting *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 157 (6th Cir.1993)). For example, "a demand is legally impossible for jurisdictional purposes when it runs up against a statutory or contractual cap on damages . . . or when the theories of damages employ double counting." *Allstate Ins. Co. v. Renou,* 32 F.Supp.3d 856, 860 (E.D. Mich. 2014) (citations omitted). In the context of an action seeking injunctive relief, the amount in controversy is the "monetary value of the benefit that would flow to the plaintiff if the injunction were granted." *Smith v. GTE Corp.*, 236 F.3d 1292, 1309 (11th Cir. 2001).

Here, Bellville's contention that ViSalus' damages are unduly speculative misapprehends the "legal certainty" test applied by the Sixth Circuit. Indeed, Bellville offers "no basis to conclude that [ViSalus'] claim is offered in bad faith. Nor does [Bellville] offer any rationale for reaching a *legal certainty* that the amount in controversy is [less than] $75,000." *Stewart v. Geostar Corp.*, 07-13675, 2008 WL 1882698, at *2 (E.D. Mich. Apr. 24, 2008) (Ludington, J) (emphasis supplied) ("[d]efendant has provided no rationale for concluding-to a legal certainty-that the amount in controversy is $75,000 or less, notwithstanding the fact that Defendant, as the entity comprised of the shares at issue, is uniquely able to provide precisely that information."). On the contrary, ViSalus, in its response, offers several

plausible theories in support of the demand made in its complaint, not the least of which is the fact that Bellville generated nearly $50 million in sales in his last three years with the company. (Plf.'s Resp. 3; Ex. 2, LeGall Aff. ¶ 5). Indeed, Bellville admits that, in his final year with ViSalus, his downline network consisted of 421 individual distributors and 1,113 customers. (Def.'s Mot. 4). Forecasting future lost sales based on Bellville's prior performance is, at a minimum, properly a subject for expert debate.

Moreover, at least two decisions from the Sixth Circuit directly support the conclusion that ViSalus has adequately satisfied the amount in controversy requirement. In *Basiccomputer Corp. v. Scott*, 973 F.2d 507 (6th Cir. 1992), the court looked to sales generated by prior employees as well as alleged competitive losses suffered by the employer in determining that the jurisdictional threshold under § 1332 was satisfied. There, the court, also considering breach of contract claims stemming from a standard employment agreement, reasoned that:

> The [lower] court did not err in concluding that Basic met the amount in controversy requirement. Each of the defendants generated sales worth well over $100,000 per year while they worked for Basic. In addition, Basic alleged that it suffered severe competitive losses from the mass departure of the defendants to Sears and from the defendants' alleged attempts to lure Basic's clients to Sears. Since there is no legal certainty that Basic's claims are worth less than $50,000, we affirm the district court's finding that it had diversity jurisdiction over this dispute.

*Id.* at 510. Similarly, in *FirstEnergy Solutions Corp. v. Flerick,* 521 Fed. App'x. 521 (6th Cir. 2013), the defendant resigned his position with his employer to work for a competitor in violation of a noncompetition clause in his employment agreement. After considering the defendant's yearly sales and performance goals, the court summarily rejected the

6

defendant's argument concerning subject matter jurisdiction, concluding that "[w]e cannot say to a legal certainty that FirstEnergy's claim implicates less than $75,000." *Id.* at 525.

Nor does Bellville's reliance on *Morrison v. Allstate Idem. Co.* 228 F.3d 1255 (11th Cir. 2000), persuade the Court that the result should be any different. There, the Eleventh Circuit held that the value of an injunction requiring the insurer to compensate all class members for the diminished value of their vehicles *after* an accident was too speculative because "it is simply impossible to know which class members [would] be involved in automobile accidents and claim diminished value." *Id.* at 1269. Here, by contrast, ViSalus seeks injunctive relief to prevent intentional, not accidental, conduct by Bellville in allegedly soliciting its distributors. Moreover, ViSalus' right to relief is not contingent upon some future unforeseeable event.

Accordingly, the Court will not dismiss for lack of subject matter jurisdiction, because there is no "legal certainty" that the amount in controversy does not exceed $75,000, as alleged by ViSalus in the complaint. "Defendant, not Plaintiff, bears the burden to show the insufficiency of the amount in controversy to a legal certainty." *Stewart*, 2008 WL 1882698, at *3. Bellville has not, and cannot, meet this burden.

## IV.   Conclusion

For the above-stated reasons, the Court DENIES Defendant's motion to dismiss the complaint.

SO ORDERED.

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: February 27, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 27, 2015, by electronic and/or ordinary mail.

        s/Carol J. Bethel
        Case Manager